IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

    Vs.                        Civil Case No. 05-3280-SAC
                                  Criminal Case No. 99-40076-01-SAC

JAMES E. CLARK,

        Defendant/Movant.


MEMORANDUM AND ORDER

The case comes before the court on the defendant's motion to modify

sentence pursuant to 18 U.S.C. § 3582(b)(2) and (3).  (Dk. 90).  The defendant

argues the court incorrectly classified his violation of supervised release and, thus,

considered the wrong guideline range in sentencing him on this violation.  Seeing

that the defendant's motion had been docketed as a motion to vacate under 28

U.S.C. § 2255, the government filed its response on the merits arguing that the

defendant's violation was properly classified as a Grade A violation citing several

decisions from other circuits.  (Dk. 92).  In reply, the defendant repeats his

arguments that the conduct on which he was convicted in state court was not a

"crime of violence" as to justify a Grade A classification.  (Dk. 93).

Six months after completing his term of incarceration for the bank

fraud conviction in this case and while on supervised release, the defendant was

arrested in December of 2002 and subsequently charged in the District Court of

Shawnee County, Kansas, Case No. 03-CR-00405, with fleeing and eluding a

police officer and felony obstruction.  In March of 2004, the defendant entered a

plea of nolo contendre to fleeing and eluding a  police officer and was sentenced in

May of 2004.

At the final revocation hearing in this case, the defendant stipulated

that this state conviction violated the terms of his supervised release.  Relying on

that stipulation and the violation report, the court revoked the defendant's

supervised release and proceeded with sentencing at the final revocation hearing.

The violation report recommended a Grade A classification for the defendant's

violation.  Without an objection by the defendant, the court followed that

recommendation.   The policy statement at U.S.S.G. § 7B1.4 advises a sentence of

33 to 41 months for Grade A violation and a criminal history category of six.  The

court sentenced the defendant to 33 months of custody with no supervised release

to follow.  The defendant filed no notice of appeal and less than a year later filed

the motion now pending.

The defendant asserts his motion for relief is filed pursuant to 18

U.S.C. §  3582(b)(2) or (3).  (Dk. 90).  Neither of these provisions has any

application to this proceeding, as no direct appeal was taken and no Rule 35

motion has been filed.  The clerk of the court docketed the defendant's pleading as

a § 2255 motion, and the court subsequently filed a minute order setting deadlines

for the government's response and the defendant's reply.  The defendant later filed

a reply and characterized it as filed "pursuant to Rule 5(d) of 28 U.S.C. §  2255."

With the defendant's apparent consent, the court shall treat the defendant's filing as

seeking relief pursuant to 28 U.S.C. §  2255.

**GENERAL § 2255 STANDARDS**

A district court may grant relief under § 2255 if it determines that "the

judgment was rendered without jurisdiction, or that the sentence imposed was not

authorized by law or otherwise open to collateral attack, or that there has been such

a denial or infringement of the constitutional rights of the prisoner as to render the

judgment vulnerable to collateral attack."  28 U.S.C. § 2255.  "Section 2255

motions are not available to test the legality of matters which should have been

raised on direct appeal."  *United States v. Warner*, 23 F.3d 287, 291 (10th Cir.

1994) (citation omitted).  When a petitioner "fails to raise an issue on direct appeal,

he is barred from raising the issue in a § 2255 proceeding, unless he establishes

either cause excusing the procedural default and prejudice resulting from the error,

or a fundamental miscarriage of justice if the claim is not considered."  *United*

*States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996); *see also United States v. Frady*,

456 U.S. 152, 167-68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  "A defendant

may establish cause for his procedural default by showing that he received

ineffective assistance of counsel in violation of the Sixth Amendment."  *United*

*States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995) (citation omitted).  Put another

way, "[a]n attorney's error provides cause to excuse a procedural default only if the

error amounts to constitutionally ineffective assistance of counsel."  *Rogers v.*

*United States*, 91 F.3d 1388, 1391 (10th Cir. 1996) (citations omitted), *cert.*

*denied*, 519 U.S. 1134, 117 S. Ct. 1000, 136 L. Ed. 2d 879 (1997).

To establish a claim for ineffective assistance of counsel, a defendant

must show (1) that his counsel's performance fell below the constitutional minimum

guaranteed by the Sixth Amendment, that is, "an objective standard of

reasonableness," and (2) that his counsel's errors prejudiced him, that is, "were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland v. Washington*, 466 U.S. 668, 687, 690, 104 S. Ct. 2052, 80 L. Ed. 2d

674 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed.

2d 203 (1985).  To show deficient performance, the defendant must show that his

counsel's performance was "completely unreasonable, not merely wrong."  *Hoxsie*

*v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied*, 522 U.S. 844, 118 S. Ct.

126, 139 L. Ed. 2d 77 (1997).  To show prejudice, the defendant must establish

that, but for counsel's unprofessional errors, there was a reasonable probability that

the outcome of his conviction and/or sentencing would have been different. *Id*. at

1245; *see Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Id*.

The court must hold an evidentiary hearing on a § 2255 motion

"[u]nless the motion and the files and records of the case conclusively show that

the prisoner is entitled to no relief."  28 U.S.C. § 2255; *United States v. Galloway*,

56 F.3d 1239, 1240 n. 1 (10th Cir. 1995).  The burden is with the defendant to

allege facts which, if proven, would entitle him or her to relief.  *See Hatch v.*

*Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235, 116

S. Ct. 1881, 135 L. Ed. 2d 176 (1996).  "[T]he allegations must be specific and

particularized, not general or conclusory."  *Id*.  The court finds that a hearing on the

defendant's motion is not necessary because the materials already in the record

conclusively show that the defendant is not entitled to relief on his claims. The

court denies the defendant's request in his reply brief for an evidentiary hearing.

**GOVERNING LAW AND ANALYSIS**

The Sentencing Guidelines define a Grade A violation to include

conduct that is a felony offense under federal, state or local law and that "is a crime

5

of violence."  U.S.S.G. § 7B1.1(a)(1), p.s.  "Crime of violence" here borrows the

definition of the same term found in U.S.S.G. § 4B1.2 and its commentary.

U.S.S.G. § 7B1.1, p.s., comment. (n. 2).  Thus, a crime of violence includes

"conduct that presents a serious potential risk of physical injury to another."

U.S.S.G. § 4B1.2(a)(2).

        In determining whether a prior conviction meets the definition of a

crime of violence, the Supreme Court has instructed sentencing courts to take "a

formal categorical approach, looking only to the statutory definitions of the prior

offenses, and not to the particular facts underlying those convictions."  *Taylor v.*

*United States*, 495 U.S. 575, 600 (1990); *see United States v. Hernandez-*

*Rodriguez*, 388 F.3d 779, 782 (10th Cir. 2004).  If the statutory definition "reaches

behavior that may or may not encompass conduct that constitutes a crime of

violence," the court may extend its inquiry beyond the statute.

*Hernandez-Rodriguez*, 388 F.3d at 782-83 (quotation marks and citations omitted).

When, like here, the defendant pleaded guilty to the prior offense, the court may

consider the "charging document, written plea agreement, transcript of plea

colloquy, and any explicit factual finding by the trial judge to which the defendant

assented."  *See Shepard v. United States*, --- U.S. ----, 125 S. Ct. 1254, 1257 161

L. Ed. 2d 205, 211 (2005).

6

The defendant was charged and convicted of fleeing and eluding a

police officer in violation of K.S.A. 8-1568(b)(1).  This statute defines the offense

as the violation of subsection (a) and the commission of other conduct outlined in

subsection (b).  Subsection (a) makes it unlawful for a driver of a motor vehicle

willfully to fail or refuse to stop or otherwise flee or elude a pursuing police vehicle

or bicycle after being signaled to stop by a uniformed police officer with a marked

vehicle or bicycle.  K.S.A. 8-1568(a).  The violation of subsection (a) is a class B

nonperson misdemeanor.  K.S.A. 8-1568(c)(1).  Subsection (b)(1) makes it

unlawful for a driver of a motor vehicle to violate subsection (a) and during the

police pursuit to commit "any of the following:"

> (A) Fails to stop for a police road block; (B) drives around tire deflating
> devices placed by a police officer; (C) engages in reckless driving as defined
> by K.S.A. 8-1566 and amendments thereto; (D) is involved in any motor
> vehicle accident or intentionally causes damage to property; or (E) commits
> five or more moving violations.

K.S.A. 8-1568(b)(1).  Kansas law characterizes a conviction of this subsection to

be "a severity level 9, person felony."  K.S.A. 8-1568(c)(4).  Thus, the statutory

offense under which the defendant was convicted requires that the driver of a

motor vehicle willfully refuse to stop for or flee from a uniformed police in a

marked police vehicle, that a police pursuit ensues, and that the driver during the

pursuit operates the motor vehicle in one of the five ways described in paragraph

(b).

Fleeing or eluding a police officer is not one of those offenses specifically named as a crime of violence in U.S.S.G. § 4B1.2 and its commentary. Nor does K.S.A. 8-1568(b)(1) have an element that requires the use or attempted use of physical force against another person.  Thus, the Kansas offense of fleeing or eluding an officer in violation of K.S.A. 8-1568(b)(1) is a crime of violence only if it qualifies under the "otherwise" clause of § 4B1.2(a)(2), that is, conduct presenting "a serious potential risk of physical injury to another."

There appears to be no Tenth Circuit decision on whether the commission of K.S.A. 8-1568(b)(1) involves conduct presenting a serious potential risk of physical injury to another.  Other circuits, however, have considered felony offenses for fleeing or eluding police officers in other states and concluded they presented a serious potential risk of physical injury to another deserving categorical treatment as crimes of violence.  *See, e.g. United States v. Albritton*, 2005 WL 1367229 (11th Cir. Jun. 20, 2005) (considering Florida statute for aggravated fleeing and eluding, Fla. Stat. Ann. § 316.1935(4) (West 1999) which includes an element that the defendant "[a]s a result of such fleeing or eluding, causes injury to another person or causes damage to any property belonging to another person."); *United States v. Rosas*, 410 F.3d 332, 335-37 (7th Cir. 2005) (considering Wisconsin

statute[1]); *United States v. Martin*, 378 F.3d 578 (6th Cir. 2004) (considering

Michigan statute of fleeing and eluding in the third degree, Michigan Compiled

Laws § 750.479a(1)and (3), that is, the driver of the motor vehicle fails to obey

officer's signal to stop and this violation "results in a collision or accident," or

"occurred in an area where the speed limit is 35 miles per hour or less"); *United*

*States v. Howze*, 343 F.3d 919 (7th Cir. 2003) (applying Wisconsin statute

discussed in *Rosas*).

Though there may be one or more distinctions between the felony

fleeing and eluding offense in Kansas and those of the other states, these

distinctions do not bear materially on the holdings or analysis found in the opinions

applying those statutes.  Instead of assessing the specific risks of injury for each

listed driving violation or condition, the courts were satisfied that the statutes

---

[1]The defendant was convicted of the felony offense for fleeing a police
officer in violation of Wis. Stat. § 346.04(3), which provides:

> "(3) No operator of a vehicle, after having received a visual or audible signal
> from a traffic officer, or marked police vehicle, shall knowingly flee or
> attempt to elude any traffic officer by willful or wanton disregard of such
> signal so as to interfere with or endanger the operation of the police vehicle,
> or the traffic officer or other vehicles or pedestrians, nor shall the operator
> increase the speed of the operator's vehicle or extinguish the lights of the
> vehicle in an attempt to elude or flee."

punished elusive driving during flight and that such conduct generally presents a

serious substantial risk of physical injury to another.  To be convicted of K.S.A. 8-

1568(b)(1), a defendant must have fled from a uniformed officer signaling the

defendant to stop and during the pursuit the defendant must have operated his

motor vehicle in one of the elusive ways described by statute:  failing to stop at a

police road block, driving around tire deflating devices placed by the police,

reckless driving, having an accident or causing damage to property, or committing

five or more moving violations.  Such elusive driving "creates a conspicuous

potential risk of injury to pedestrians," persons operating or riding in other vehicles

on the road, "passengers in the fleeing car and the pursuing officer," as well as

officers operating the road block or the tire deflating devices.  *United States v.*

*Martin*, 378 F.3d at 582.

        Besides the risks associated with the elusive driving maneuvers, there

is also the fact "that flight itself creates a risk of injury to others, so too does the

suspect's eventual apprehension.  By making a deliberate choice to disobey a

police officer, the motorist provokes an inevitable, escalated confrontation with the

officer."  *United States v. Martin*, 378 F.3d at 582.  This risk is similar to that

involved with escape offenses.  *Id*.; *United States v. Howze*, 343 F.3d at 921-22.

        Part of the assessed risk with an escape is that someone could be hurt

in the recapture or during the flight to avoid recapture. *United States v. Howze*,

343 F.3d at 922. The Tenth Circuit has "'held categorically that an escape always

constitutes conduct that presents a serious potential risk of physical injury to

another.'" *United States v. Turner*, 285 F.3d 909, 915-16 (10th Cir.) (quoting

*United States v. Springfield*, 196 F.3d 1180, 1185 (10th Cir. 1999), *cert. denied*,

529 U.S. 1029 (2000)), *cert. denied*, 537 U.S. 895 (2002); *see also United States v.*

*Brown*, 314 F.3d 1216, 1223 (10th Cir.), *cert. denied*, 537 U.S. 1223 (2003). The

Court in *Springfield* held that a state "conviction for a nonviolent, walk-away

escape constituted a 'crime of violence' under the Guidelines because 'escape is

always a violent crime.'" *United States v. Brown*, 314 F.3d at 1223 (quoting

*Springfield*, 196 F.3d at 1185). "Even though initial circumstances of an escape

may be non-violent, there is no way to predict what an escapee will do when

encountered by the authorities. Every escape is a 'powder keg, which may or may

not explode into violence.'" *United States v. Turner*, 285 F.3d at 916 (quoting

*United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)).

A violation of K.S.A. 8-1568(b)(1) necessarily includes the risk of

injury that arises from the driver's flight to avoid apprehension. The Seventh

Circuit convincingly observed:

When the *crime* is flight to avoid apprehension, what is only a risk for escape

becomes a certainty.  Bystanders are in particular jeopardy.  Collisions between fleeing vehicles and pedestrians or others who get in the way are common.  (citations omitted).  Thus, if all escapes are violent crimes, all flights to avoid arrest must be violent crimes.  Indeed, flight may be even more dangerous than escape, because many escapes do not entail flight to avoid capture–but *all* flights involve that risk-creating conduct.

*United States v. Howze*, 343 F.3d at 922.  That the flight involves a motor vehicle only enhances the seriousness of potential risks of physical injury.  *Cf. United States v. Mendez-Lopez*, 338 F.3d 1153, 1160 (10th Cir.) ("Committing an offense while in a motor vehicle inherently increases the potential threat to public safety."), *cert. denied*, 540 U.S. 1093 (2003).  Because the Guidelines require only the serious potential risk of physical injury and not actual harm to constitute a crime of violence, the court categorically holds that a violation of K.S.A. 8-1568(b)(1), like an escape conviction, always constitutes conduct that presents a serious potential risk of physical injury to another and, therefore, necessarily qualifies as a "crime of violence" under the Guidelines.

The court finds no error in the Grade A classification given to the defendant's violation of supervised release or in the advisory Sentencing Guideline range used at sentencing.  The defendant has not shown that he received ineffective assistance of counsel in violation of the Sixth Amendment during the revocation of supervised release proceedings and subsequent sentencing.  The defendant is not

entitled to any relief on his motion.

IT IS THEREFORE ORDERED the defendant's motion for relief

pursuant to 18 U.S.C. §  3582(b)(2) or (3) (Dk. 90) is treated as motion for relief

pursuant to 28 U.S.C. §  2255 and is denied.

Dated this 9th day of August, 2005, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

13